I would like to reserve two minutes for rebuttal. Your Honors, in this case, the judge that issued the wiretap orders, Judge Snyder, did not abuse her discretion in doing so. The affidavit that supported the wiretaps was adequate to support her necessity determination. Now, later in this case, the reviewing district court, Judge Takasugi, did suppress the evidence from the wiretap. Stepping back for a moment from Judge Takasugi's reasoning in his order, here is why the wiretap affidavit was sufficient. The reason why it was sufficient is that the government in the affidavit stated and explained that it was attempting to prosecute and develop evidence on and even identify all the members of the conspiracy at issue, and to garner evidence on them. At the time of the wiretap affidavit, the government was only aware of two particular participants in that conspiracy, Gomez and Leal. It did not know about the other 27 defendants. Roberts, Jr. Let me just, I don't want to interrupt your train of thought, but let me back up for a second, because Judge Takasugi did something that I'm not sure I completely understand. He seems to have made two rulings, or shoved two rulings into one. He says the government did not sufficiently use confidential informants or provide a full and complete statement explaining. So, your failure to provide a full and complete statement seems to be under a de novo review, but whether the court abused its discretion in concluding that the necessity requirement had been shown seems to be under an abuse of discretion. I mean, what did Judge, what was Judge Takasugi getting at when he said you didn't provide a full and complete statement? That's sort of magic words. You understand that. Mr. Batey, that, I believe, was an attempt to shoehorn a standard run-of-the-mill necessity determination by the court into this Court's case law stating that the government's not providing a full and complete statement deserves de novo review rather than abuse of discretion. What this was, like all the other cases that were cited in our brief, was simply a necessity determination. Where this Court has applied de novo review has been in two instances. One, where the government hasn't applied, hasn't offered any sort of statement at all, such as case Calustian that's in our brief and another case, Bagnolio, that's in our brief. And the other circumstance for de novo review has been where the government has made misstatements. Kind of like Frank's hearing material. Yes. Omissions, distortions, things like that. Yes. Because then, arguably, the government has not provided a full and complete statement because of the facts that it put in there. Did the other side actually argue that the statement that you provided wasn't full and complete? Or did they argue that the necessity hadn't been adequately shown? Like Judge Takasugi, they articulated the standard of the government has not applied, has not submitted a full and complete statement. But what they actually argued in substance was that there was not necessity in the where-depth. Here, there was a full and complete statement. The government discussed all sorts of things. Pen registers, trash searches, and the use of Mail covers. Mail covers, yes. And the district court's position, the defendant's position here, would, would transmute any type of run-of-the-mill necessity determination into an argument that the government has not provided a full and complete statement. Because in any of these cases, in all of these cases, defendants always argue there is not enough necessity because there wasn't enough shown as to X, say, as to informants not being able to penetrate the conspiracy. They say there wasn't enough shown. That's normally reviewed for abuse of discretion. But if you simply phrase it differently and say the government's statement was lacking, then under defendant's view, you get de novo review. This is an institutional concern to us, and it's a problem if this were actually the case, because in a typical case, a wiretap order that's issued by an issuing judge is reviewed twice. And law enforcement is reviewed long after the initial issuance of the order, after a lot of resources are expended. A wiretap order, as here, is often issued. An investigation goes on for a long time. Evidence is developed. And then it's reviewed by a district court judge after indictment. Here, of course, there's been, you know, a lot of things have happened. Twelve defendants have pled guilty. There's nine facing trial. And, and of course, in a typical case, it can be reviewed again by this Court after convictions normally. And to apply a de novo standard at each time makes little sense as far as the expenditure of resources goes. So, counsel, it's your position that the motion to suppress should have been reviewed under the abuse of discretion standard? Absolutely. As this Court has held in McGuire and a number of other cases, and there's three cases cited in our brief where this Court has reversed a district court for, you know, in this context. Would your position be the same if there had been a, an argument by defendants that there were misrepresentations in the, in the affidavits that procured the wiretap? Would your answer be the same? If the district court had found that there were misstatements in the affidavit and there were false statements, then following Blackman and following Carniero, another case from this Court, it would be de novo review, because there's really nothing to defer to at that point because the things that the issuing judge actually relied on are thrown out by this Court. And what do you think our standard review is on the motion to suppress ruling? It's abuse of discretion. There's every reason to think that there's nothing to indicate that the standard review should be somehow different between this Court and the district court. Our standard review on the motion to suppress ruling that was made by the district court, you say our standard review is abuse of discretion? Well, the standard review, what is being reviewed here is the issuing judge, Judge Snyder's issuance of the wiretap. That's reviewed for abuse of discretion. Don't we have to rule on the, I thought you were appealing the ruling on the motion to suppress. Isn't that the decision that's before us for review? Yes, I understand. That's what is appealed from. The substance of what's being reviewed is Judge Snyder, the issuing judge's ruling. Exactly. But we have to rule on this motion to suppress. Yes. The ruling that was made by the district court on the motion to suppress. In ruling on that, what is our standard review? I understand. That is entitled to no particular weight by this Court other than the weight that I'm sure the district, this Court must consider the judge's arguments. So are we reviewing the motion to suppress ruling de novo? Is that yours? What's our standard review? Yes. The standard review, as it's usually articulated by this Court, is what you are reviewing is the first exercise of discretion. What's your best case authority for the proposition that you've appealed a motion to suppress, yet we're reviewing the underlying issuance? What case are you relying upon to support that argument? Your Honor, there's three cases cited in our brief, Groen, Camito, and Sandoval, early in our argument, each one of which were circumstances where the reviewing district court suppressed wiretaps issued by an issuing district court, and this Court reversed the reviewing. And how did we reverse? Did we reverse by saying we were reviewing the underlying? Yes. Reviewing the underlying order, in this case by Judge Snyder, by the issuing judge for abusing. What were those cases? I believe they're Groen, Camito, and Sandoval, early in the government's argument in its brief. Because the ultimate question before us is the sufficiency of the affidavit, isn't it? Absolutely, Your Honor. And that's the basis on which the wiretaps were issued. Yes. Yes, it is. And another way of As I read the suppression order in this case, what the district court said was the government has failed to show why it couldn't have proceeded further with the use of informants. And there was no need for to get wiretaps. If you had one informant who was ready to buy a substantial amount, and it should have proceeded with that. That's basically what the judge said, isn't it? That's the substance of what the judge said, yes. And that is And I gather your major argument is that that would not have been sufficient in light of what the purpose of the inquiry was, is to find, to open up this whole conspiracy, just not the two of them. Because if they had, even if they had made a large purchase from Gomez, all they would have bought was one person. Yes. And the importance of a broader conspiracy, I suppose, is shown by the fact that after the wiretaps, they were able to indict 29 of them, not just the two of them. Sure, absolutely, Your Honor. And that is this sort of reasoning that an affidavit can support necessity by virtue of the government going after other unknown members of a conspiracy and developing evidence on them is supported by several cases from this Court. It's not sort of a new proposition. In McGuire, which was a 2002 case, it was the case from this Court dealing with a conspiracy involving Montana Freeman, and there were informants that had infiltrated that conspiracy. And in upholding the wiretap there, this Court held that there was necessity because of the statements in the affidavit averring that the informants could not get at the other members of the conspiracy. And this Court stated, quote, We have consistently upheld findings of necessity where traditional investigative techniques lead only to the apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of other satellite conspirators. That's what McGuire said, and there's other cases supporting that. In response to what Judge Rawlinson was getting at before about deference, is there any deference to the reviewing district court's order here, well, the typical way that one of these wiretap cases comes to this Court, of course, is after conviction, when the defendant is appealing. And if there was deference to district court, reviewing district court's order, this would mean that the government on these typical appeals could argue to this court, hey, you should give deference to the reviewing district court's order. This is never what this district or what this Court does in these cases where defendants are appealing. This Court always says, no, we have to look at the affidavit itself and the issuing judge's discretion. I'm sure this Court takes into consideration the arguments that the district court has made, either suppressing or not suppressing evidence in these orders, but the focus is whether the affidavit is sufficient to support what the issuing judge did. Here it was. The cases in support of the proposition I was reading from McGuire include not just McGuire, but the Schreyer case, which was Judge Trost's decision from just this past September involving the Mexican Mafia organization here in Los Angeles, where the opinion states that seven informants had provided substantial evidence about the conspiracy. However, the affidavit stated and stated reasonably that these informants could not develop evidence on the other conspirators. And thus, this Court upheld necessity in that case. And so McGuire and Schreyer are just two of several cases cited in our briefs that support this general proposition. Thus, this Court does not even, if it did not want to, have to get into Judge Takasugi's specific reasoning, although we believe Judge Takasugi erred in two ways, one of which was by applying the wrong standard of review and reviewing it de novo, the other of which was essentially concluding that the government would have had to release an informant from custody and use that informant in some way to gather evidence before seeking this wiretap, essentially putting the government to the option of either you release this informant from custody and use him, or you don't get your wiretap. And so it almost seems as though the judge is telling the prosecution how to conduct an investigation. The judge says, you don't need to wiretap, you should use those informants. They could get your case for you. Yes. And that's, we believe, going a little too far. And we believe that it's adequately stated, if you look at paragraphs 29 and 30 of the affidavit, why it is that we were choosing to not use that informant. For one, we stated that the informant's in custody. And our position is that that's enough. It's enough to tell an issuing judge that an informant's in custody. At least it's enough for, to support that issuing judge's discretion in not issuing a wiretap. If the issuing judge has questions of us further, which some judges in our district do, perhaps at that stage we would need to come forth with more information. But we believe, as a general matter, it's enough to say this informant is not available because he's in custody. But we went further than that here, Your Honors. We explained that the informant could be used to make a telephone call to the known conspirators to set up the drug deal, and we explained why we weren't going to pursue that. And we even said this may be an option later on if we want to develop specific evidence on the known conspirators. But here we're trying to get at the other conspirators. And we further in the affidavit said, even if we attempted to release the informant from custody, we still do not think that this would accomplish the goals of the conspiracy of getting at the other conspirators, for all the reasons stated in the affidavit, which included the history of the known informant's dealings with these particular known defendants and other history about the particular defendants and other drug dealers in general. This was ample to support the assuming judge's discretion in this case. Why don't you save the rest of your time? We'll hear from the other side of the room tomorrow. Thank you, Your Honors. Good morning, Your Honors. I'd like to go a little out of – I want to address some of your – Could you tell us first who you are? I'm sorry. I've heard these things, and so it's good for the tape for us to know who you are. Thank you. Tim Lannan for Defendant Fragoso. I also would like to leave a little time for Mr. Dudley, who represents the co-defendant. And I'd like to go directly to the Court's concerns from your discussion with opposing counsel. First of all, I want to address the standard of review, which is, I think, very clear from the cases of the Ninth Circuit, and it's very well articulated in Judge Tagasuke's order in this case, which is in the record between 553 and 556. He starts out saying that he is going to apply, even though the government argues that de novo – that abusive discretion standards should be used. He says that this Court must review de novo whether a full and complete statement of the facts was submitted. Now, this Court has held – That's completely right. But what was not full or what was not complete? Well, he – Judge – What was not full and what was not complete? I've read this affidavit two times. What was not – okay, I'm sorry. What was not complete was that the government had not given a full and complete statement why traditional investigative techniques had been used specifically informants. And not just one informant bias. See, that's why – they explained why they weren't using informants. Well – Tagasuke just disagreed with them. That's all. It was full. It was complete. And according to Judge Tagasuke, it's unpersuasive. Well, that's not what he says, Your Honor. He says – No, I know. And I think he really confused language here and forced two things together that didn't fit. I was looking for some big omissions. There's no talk about mail covers. There's no talk about physical surveillance. There's no talk about other ways to do this. There's no – there's no talk about – they can say it's not full and complete because they left out all these traditional methods. That's what you're after. Do traditional methods give you an opportunity to accomplish the same thing without intruding on everybody's lives with wiretaps? What method did they leave out that they might have utilized and didn't? Specifically, they had informants that they could use and they did not use them sufficiently to – But they gave a full and complete statement as to why. Well, Your Honor – The full and complete statement is there. It's whether or not it's persuasive. And as Judge – now Justice Kennedy said in Brown, when you get to that question, then it's abuse of discretion and it goes to the issuing judge's decision. See, I couldn't figure out what wasn't full and what wasn't complete. I can see why you would argue a lot of it's not persuasive and Judge Takasuki said, well, it's not persuasive. But it was full. Here are all of our informants, all named by numbers and everything else. Here's everything and here's what we might do with them, but they're in custody. And so in our judgment as investigators, we don't think this will work therefore. And he says, ah, you let them out of jail. That's still full and complete. It's just not persuasive to Judge Takasuki. Well, he says more than that, though. He doesn't say you just didn't let one out of jail. He basically notes that the government, that the Appian basically thwarted at least two what would have been feasible and successful transactions, narcotic transactions, first in June 29th where the targets, and these were the main targets, they're called, it's called the Gomez Trafficking Organization. They are ready to do a deal and they want to get better drugs and the FBI calls it off saying, well, we don't want to, as Judge Takasuki knows. Is that in the affidavit? Yes, it is. Full and complete. Full and complete. Well, and he just says, you haven't persuaded me. That's where he made a big mistake. He confused full and complete with reviewing Judge Snyder's determination under an abusive discretion standard. I'm taking this from Justice Kennedy, now Justice Kennedy, who says, and that was a case where the district court had suppressed the evidence. It came up and Justice Kennedy said, you look at full and complete, de novo. But then when you get down to the decision, as to whether the necessity requirement had been satisfied, then you start talking about abusive discretion. See, every time I look, I wonder, what's missing? And all you tell me is what's missing is that it's not persuasive. Well, what Judge Takasuki... It's all there. I think that his ruling says that to be complete, you have to do, you have to lay out what you could do or why you can't, why investigators will not be successful. But they did that. He's just not convinced. They said the reason the informants won't do the trick is because the informants can only get to the people with whom they have direct contact. But this is obviously a large-scale operation and we need something more than that. There's no way we can find out their sources of supply or who are their distributors unless we can listen into their phone conversations with those people and we could have informants coming, the same informants coming back and making a number of buys, but that would not reveal the identity of the whole organization. Now, why isn't that full and complete explanation of why the, what you might call more traditional types of enforcement wouldn't work in this case? Well, as to that, Your Honor, there's a line of cases that says that the fact that it's a conspiracy is not enough and that drug conspiracies in particular, conspiracy should not be used to justify not using traditional. I thought there were also some cases indicating it's permissible to say that we're trying to get the whole scope of this group. We can't catch them all and therefore we can't catch them all with informants so therefore the way to find their, to determine their identities. Well, the government mentions McGuire, Your Honor, but McGuire is very, is easily distinguishable. That's what, in McGuire they mention, they did say that in a conspiracy the government, the standard may be lighter but they also mention four or five times in that decision it's because they were dangerous, they were trying to overthrow the government. There's a line of other cases that say that just because it's a conspiracy should not prevent, should not allow the government from not giving a full and complete statement of the facts and to use all traditional investigative methods before they, which method did they leave out under necessity? I started reading this and you see I had the privilege or the problem of reading every one of these things in the United States for four years when I was in town. The Assistant Attorney General had to review these things personally. I read hundreds of these things and so I thought oh well here we're going to go there's something missing and I went through here and I first of all saw the necessity the identification of everybody the identity role the main customers the locations where this stuff is the management of the proceeds and then I see undercover agents confidential informants did they leave did they have an informant that they left out? No not that I'm aware of. Okay I'm not either so that's a full and complete statement of who all the informants are and why they don't think it's going to be sufficient then they have physical surveillance okay that's a traditional category that I read a thousand of pen register, traps, trace devices, search warrants, interviews, grand jury subpoenas they go through every one of these things trash searches even which sometimes they used to have in those or they didn't consensual recordings and financial investigations police reports arrest records mail covers and I'm saying what's missing? The answer is nothing. Well he agrees with you on the several other methods used but where he disagrees is on the informants specifically. You see I don't agree or disagree I'm simply looking at Judge Schneider's decision I'm not clear that he disagreed on the informants what should have been said about the informants and disclosed about the informants that was not disclosed he's not talking about failing to state things about the informants he's saying they should have used the informants more and that isn't a failure it seems to me to state that's a question of whether they needed to use the informants more. In any case Your Honor as far as the merits do go Judge Takasugi found that that in fact that the government I believe that he was implying in his order that they manufactured necessity by setting up  they had an informant ready to make a buy on June 28th a month later the FBI stopped that sale on the grounds that an attempt to maintain some kind of a some credibility for the informant as a large scale drug distributor they didn't want him to wait. A month later the target calls them and says here I am I've got the good stuff let's do the deal and the government says oh we can't let him out we can't do that now because he's in custody but they make no attempt nor do they give any reason why they did not they were unable to allow him to complete that transaction. Was he in custody? He was in custody and Judge Tagasugi mentions that they could have easily So now the rule is going to be you have to let an informant out of custody? No that's what the government would like to present it as but if you read Judge Tagasugi's ruling there are several times he believes these and by the way one week later That's the problem he believes No but one I understand but one week later I mean we can believe it from reading Judge Snyder didn't believe it Well one week later following the And there's no Frank's hearing here you didn't challenge the veracity of this No there's not a Frank's hearing but there's You're not going to get very far arguing on appeal that there's some evil motive underneath this whole thing and manufacturing necessity you never challenged any of that Well we did challenge that Your Honor We challenged in our motion and I think that we definitely asserted in our motion and we were ready if need be to cross examine the agent but Judge Tagasugi did not find it necessary to do that and I was going to say that one week later and I think that the judge the district court judge can look at that one week later the search warrant the wiretap warrant was signed by Judge Snyder and it appears that the government really had no intention of using traditional means that they actually avoided that in order to get a wiretap maybe because it's easier or for whatever reason  Tagasugi's ruling I think is very sound in looking at the number of attempts that were available the number of opportunities that were available and I would also add that the cases hold that even if as your honor questioned even if they are looking to get a bigger wider scope of suspects a broader scope of suspects the government still has to exhaust traditional methods of investigation and here Judge Tagasugi even though it's their best professional judgment that those traditional methods of investigation would not produce the result they were seeking in this investigation yes your honor even if their opinion they can't just use their opinion they have to give specific facts as to why in this case not in this case why if we did use this traditional method it simply    has to be well then tell me how on earth would you explain specifically as to the facts of this case why if we would the making of a single purchase this large purchase by one of the informants how would that disclose either the sources of supply or the distribution network how could that possibly do that all that would do is they nab one of the two people who made the sale that's all they could do well they would nab what they were calling the head of the organization for one thing your honor and where that would take them they might do more this was a big deal they were going to make a ten kilogram cocaine deal that was ready to be made and the agents essentially thwarted that by not completing it not allowing it to be completed well the affidavit did explain that didn't the affidavit explain that what they were seeking to do was more than that more than just making one big deal and your honor the problem with that is that you can say that forever you can always say that and that's why their cases what should they have done in order to identify everybody involved in this ring the sources of supply the management the customers everybody else and the money what should they have done in your view what they could have done is what happened in this case anyway your honor they should have made the deal arrested him and turned him into an informant like they have done anyway and judge Tagesuki mentions that the thing that becomes surreal about it is the government is saying it's not a standard investigative thing and six months before this motion they release the guy they are talking about  are not talking about it with a specific individual that's why it becomes a little silly the government argument I think that in some way it was offensive to judge Tagesuki they are using him today as we know he is a great man and he is  great man and he is a great man and he is a great man and he is an excellent man          an excellent man and he is a great man and he is an excellent man and he is a great man  he is a great   he is a great man and he is an excellent man h e h a e w h a t i t e n   y s a great man , excellent and he is a w o m a r o m a r o m a n a r o u o m a w o m a r o m a r o nd a l o m a r o a n a n o m o m       a n a m a n n  n a n a n a n a n a n a n a  a n a a     n a n
judges: Friedman, Trott, Rawlinson